ATLANTIC CASUALTY INSURANCE COMPANY v GUSTAFSON

Docket No. 325739. Submitted May 11, 2016, at Traverse City. Decided
May 26, 2016, at 9:15 a.m.

Atlantic Casualty Insurance Company brought an action for a
declaratory judgment in the Ontonagon Circuit Court against
Gary Gustafson and Andrew Aho to determine its coverage liability
under a commercial general liability insurance policy issued to
Gustafson for work performed by his business, Gustafson Excavat-
ing and Septic Systems. Aho hired Gustafson Excavating to per-
form work on his residential property, and he was injured by flying
debris when a Gustafson Excavating employee was performing
that work. Aho brought a personal injury action against Gustafson,
who then contacted Atlantic Casualty for defense and indemnifi-
cation for any liability related to the accident. Atlantic Casualty
denied coverage, reasoning that because the policy expressly
excluded from coverage bodily injury to any contractor and
defined contractor as including any property owner, the injuries
suffered by the homeowner, Aho, were not covered by the policy
issued to Gustafson. The court, Janis M. Burgess, J., agreed with
Atlantic Casualty's interpretation of the policy, granted its mo-
tion for summary disposition, and denied Aho and Gustafson's
countermotion for summary disposition. Gustafson appealed.

The Court of Appeals *held*:

When a contract is ambiguous, it is construed against the
drafter. When several words in a contract are associated in a
context suggesting that the words have something in common,
they should be assigned a permissible meaning that makes them
similar. For that reason, words grouped together in a list should
be given related meanings. In this case, under a heading entitled
"Exclusion of Injury to Employees, Contractors and Employees of
Contractors," the insurance policy excluded from coverage bodily
injury to any contractor, which the policy defined as including
"any property owner." The phrase "any property owner" could be
interpreted broadly to include anyone who owns anything, but
not even Atlantic Casualty supported that interpretation. Accord-
ingly, the phrase was ambiguous, and the insurance policy had to
be construed against Atlantic Casualty. Although the policy

included "any property owner" in the definition of a contractor, the policy otherwise listed in the definition only those persons and entities—including independent contractors, subcontractors, general contractors, and developers—that have a commercial interest in the project. Giving the listed persons and entities that are included in the definition of contractor related meanings, "any property owner" referred only to those property owners who have a commercial interest in the property where the bodily injury occurred; contrary to Atlantic Casualty's assertion, it is not reasonable to interpret the phrase to mean any owner of the property on which the insured performed work. The trial court erred by granting summary disposition to Atlantic Casualty. Aho's injury was not excluded from coverage under the policy because he did not have a commercial interest in the project, and he was, therefore, not a contractor for purposes of the exclusion.

Reversed and remanded.

*Ward, Anderson, Porritt & Bryant, PLC* (by *David S. Anderson* and *Joan Odorowski*), for Atlantic Casualty Insurance Company.

*O'Dea, Nordeen and Burink, PC* (by *Raymond J. O'Dea* and *William T. Nordeen*), for Gary Gustafson.

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

SAWYER, J. In this declaratory judgment action involving insurance coverage, the parties filed cross-motions for summary disposition, with the trial court granting the motion of plaintiff, Atlantic Casualty Insurance Company, and denying the joint motion of defendants, Gary Gustafson and Andrew Aho. Defendant Gustafson now appeals, and we reverse and remand.[1]

The facts are not in dispute. Defendant Gustafson (hereinafter, defendant) operates a business known as Gustafson Excavating and Septic Systems. He was hired by Aho (hereinafter, the homeowner) to perform

---

[1] Aho is not a party to this appeal.

landscaping and drainage work around a pond on residential property. Defendant was insured under a commercial general liability policy issued by plaintiff.

The homeowner, who was watching defendant's employee clear brush near the pond with a brushhog, was injured when a piece of debris flew from the brushhog and hit him in the eye. The homeowner brought suit against defendant. Defendant contacted his insurance agent, who assured him that the incident would be covered by the insurance policy. But plaintiff subsequently determined it had no duty to defend or indemnify because the loss came within a policy exclusion. Plaintiff then brought this action, seeking declaratory relief.

The exclusion at issue is entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors" and provides as follows:

> This insurance does not apply to:
>
>            \*   \*   \*
>
> (ii) "bodily injury" to any "contractor" for which any insured may become liable in any capacity . . .
>
>            \*   \*   \*
>
> As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, *any property owner*, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein. [Emphasis added.]

In short, plaintiff takes the position that because the homeowner is "any property owner," the homeowner comes within the definition of "contractor" and, therefore, comes within the exclusion clause for contractors. The trial court agreed, but we do not.

The relevant standard of review was summarized by our Supreme Court in *Wilkie v Auto-Owners Ins Co*:[2]

> The proper interpretation of a contract is a question of law, which this Court reviews de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). The same standard applies to the question of whether an ambiguity exists in an insurance contract. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument.

The interpretation of this particular insurance contract clause appears to be a question of first impression in this state, though it has been addressed elsewhere. Defendant relies on two cases from other jurisdictions to support his interpretation of the exclusion language. The first, an unpublished decision of the Connecticut Superior Court, *Turano v Pellaton*,[3] is the closer of the two factually. In that case, the plaintiff had hired one of the defendants to do work in his basement. The plaintiff was injured when he fell going down the basement stairs because of a step that had been removed and not replaced; he was not warned about the missing step. Our plaintiff in this case, Atlantic Casualty, also insured one of the subcontractors in the *Turano* case. In *Turano*, the third-party defendant,

---

[2] 469 Mich 41, 47; 664 NW2d 776 (2003).

[3] Unpublished opinion of the Superior Court of Connecticut, Stamford-Norwalk Judicial District, issued January 22, 2014 (Docket No. FSTCV106005723S).

Atlantic Casualty, denied coverage on the same basis asserted in the case at bar: that because the plaintiff was "any property owner," he came within the definition of "contractor" and, therefore, the same policy exclusion at issue here applied to exclude coverage in that case. The Connecticut court disagreed, concluding that the heading of "Exclusion of Injury to Employees, Contractors and Employees of Contractors" limited the exclusions that followed to situations in which the insured had employed a third party to provide services to assist the insured, not to those situations involving a customer or property owner.[4] Specifically, it noted that "this heading seems to envision situations involving employment or, more specifically, where the insured hires or employs a third party to perform services that assist the insured to perform jobs."[5]

The other case is a published decision of the United States Court of Appeals for the Seventh Circuit, *Atlantic Cas Ins Co v Paszko Masonry, Inc.*[6] The facts in *Paszko* are somewhat different than in our case and, while the plaintiff relied on the same exclusionary clause in that case, a different portion of the exclusion was at issue. In the underlying lawsuit in *Paszko*, the injured contractor, Robert Rybaltowski, brought an action against four companies, only one of whom— Paszko—was insured by the plaintiff. The other three defendants argued that they were covered under the

---

[4] *Id.* at 10-11.

[5] *Id.* at 10.

[6] 718 F3d 721 (CA 7, 2013). We note that plaintiff relies on an earlier, unreported case from the Northern District of Illinois, *Atlantic Cas Ins Co v Alanis Dev Corp*, unpublished opinion of the United State District Court for the Northern District of Illinois, issued January 25, 2011 (Docket No. 09 C 6657). While the factual situation in the district court case is closer to that in the case at bar, we place greater reliance on the more recent published decision of the Seventh Circuit.

contract as well, as "additional insureds."[7] The various defendants worked on a project involving the construction of an apartment building. Rybaltowski worked for a waterproofing company, Raincoat Solutions, which had submitted a bid to perform caulking work to the general contractor, Prince Contractors (one of the defendants claiming to be an additional insured). Prince accepted the bid, subject to its advance approval of the color of the caulk and of the competency of the caulker. Therefore, Rybaltowski was sent by Raincoat to the job site to demonstrate his skill by caulking a few windows; Raincoat was not paid for this work. After completing the demonstration, but while still at the job site, a beam fell and struck Rybaltowski. It was only after Rybaltowski was injured that a contract was signed between Prince and Raincoat.[8]

The plaintiff denied coverage, relying on the same exclusion for bodily injury to a contractor at issue in our case, though the focus in *Paszko* was on the portion of the exclusion defining "contractor" as any person "providing services . . . of any kind" to Prince.[9] In his opinion, Judge Richard Posner was very critical of the language used in the contract: "The exclusion is poorly drafted. The term 'contractor' is exemplified rather than clearly defined."[10] The court also noted the broad and unusual nature of the exclusion clause:[11]

> We don't understand the attraction of an insurance policy such as Atlantic's that contains such a broad exclu-

---

[7] *Paszko*, 718 F3d at 722. The issue of whether they were additional insureds was unresolved in the trial court and was not an issue on appeal, but the court noted that it could be an issue on remand. *Id.*

[8] *Id.* at 722.

[9] *Id.* at 723.

[10] *Id.*

[11] *Id.* at 725.

sion; a Google search suggests that the exclusion is rare, and maybe it is confined to policies issued by Atlantic. Still, broad as it is, the exclusion does not render coverage illusory. Nor can we say that it can't be as broad as Atlantic believes because then no one would buy the policy. But we still must decide *how* broad it is. And resolving ambiguity as we must against the insurer, we conclude that it is not broad enough to embrace the accident to Rybaltowski.

Judge Posner's consideration of whether the portion of the clause at issue in *Paszko* rendered the policy illusory is interesting. The *Paszko* court had earlier rejected that conclusion because, even under the plaintiff's broad reading, the exclusion would have been inapplicable to passersby and others "who might be injured at a construction site without being involved in the construction."[12] In our case, that conclusion cannot be so easily reached. While the *Paszko* court could easily note any number of persons who would not fall into the category of persons who supply services or materials—and therefore would not have been a contractor under the plaintiff's argument for a broad definition in that case—it is not so easy in this case with the phrase "any property owner." Viewed on its own, that phrase would include virtually everyone in the world; even the poorest person at least owns the clothes on his back, thus making him a "property owner" and, therefore, presumably a contractor under a broad reading of the exclusion provision. Indeed, the trial court in this case rejected the argument that the clause rendered the policy illusory only after adopting plaintiff's more limited interpretation of "any property

---

[12] *Id.* at 724. But the court did suggest that if an interpretation of an exclusion is so broad that it would render it implausible that anyone would purchase the policy, that is reason to doubt the interpretation. *Id.*

owner" as meaning the owner of the property on which the work was being performed.

Perhaps this is why plaintiff rejects the argument that "any property owner" should be interpreted literally; indeed, plaintiff admits that this would be an absurd interpretation. Plaintiff suggests that the only reasonable interpretation of the phrase would be for it to mean the owner of the real property on which the insured is performing work. While we agree that interpreting the phrase "any property owner" to mean anyone who owns any type of property would encompass virtually the entire world (except perhaps for a newborn baby) and render the policy illusory, we fail to see how it leads us to plaintiff's more specific interpretation. But more critical at this juncture, plaintiff's argument is an admission that the phrase is ambiguous and, therefore, subject to interpretation; however, we reject plaintiff's proposed interpretation.[13]

In reaching its conclusion that the policy's definition of "contractor" included the injured party in this case as "any property owner," the trial court relied on the principle of *ejusdem generis*, reasoning that the common connection among all the terms in the exclusion is that they cover "persons or entities generally and reasonably found on a construction site . . . ." There are problems, however, with this analysis. First, the principle of *ejusdem generis* does not apply in this case because we are not called on to interpret the meaning of a general term that falls at the end of a list of specific terms. As explained in *Reading Law: The Interpreta-*

---

[13] It should be noted that we are not suggesting that plaintiff could not write an exclusionary clause that excludes the property owner on whose real property the insured is performing work. Rather, we merely conclude that plaintiff has not done so with the clause before us.

*tion of Legal Texts*,[14] under the rule, the general term must follow the specific terms (of which there must be two or more). Thus, this rule of interpretation would only apply to the last clause of the exclusion, the one which reads "any and all persons providing services or materials of any kind for these persons or entities mentioned herein." While that clause was at issue in *Paszko*, it is not at issue in this case.

The appropriate interpretative canon to employ here would be the associated-words canon, or *noscitur a sociis*. This principle states that when several words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar. The canon especially holds that 'words grouped in a list should be given related meanings.'"[15] Undoubtedly, were the trial court to apply this rule of interpretation, it would have reached the same result and concluded that the "related meanings" are those individuals or entities who are likely to be found on a construction site. We disagree. Rather, we conclude that the categories listed in the exclusion are related as those who are being compensated or who otherwise have a commercial interest[16] for being on the job site. As the Connecticut court stated in *Turano*, the "language employed in the heading is not broad enough to encompass the situation of a customer/property owner. Accordingly, it should follow that everything that falls under this heading should reflect the employment situation."[17]

---

[14] Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), pp 202-205.

[15] *Id.* at 195, quoting *Third Nat'l Bank in Nashville v Impact Ltd*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

[16] Such as the developer of a commercial project.

[17] *Turano*, unpub op at 10-11.

That is to say, the term "contractor" should be interpreted to include the contractor, any subcontractors, or any vendors supplying materials or services, or those who are otherwise involved from a commercial standpoint. This would lead to a very reasonable conclusion about the meaning and purpose of the clause: to avoid the prospect that a commercial entity, which would (or at least should) have its own commercial liability policy, could tag onto the one issued by plaintiff to a particular commercial customer. Indeed, Judge Posner addressed this very issue in *Paszko*.[18] Ultimately, it led to the court's conclusion that the "interpretation that services are not provided until the contractor . . . begins to do compensated work on the project" was as plausible as the interpretation that a contractor is anyone in the construction business regardless of whether he or she was rendering a service at the time of injury.[19]

Similarly, we conclude that interpreting "any property owner" to mean someone, or some entity, who is commercially involved in the work being done is at least as plausible, indeed more so, than the interpretation that a residential homeowner falls within the category of contractor merely because work is being done on the homeowner's property. Of course, this interpretation necessitates being able to identify potential members of the category of "any property owner," and which falls within the more general category of persons or entities that have a commercial involvement in the project that gives rise to the injury, in order to give that phrase meaning. But that is easily enough done. As defendant suggests, it could easily refer to owners of equipment used in the project. For

---

[18] *Paszko*, 718 F3d at 724.

[19] *Id.* at 725.

example, if in this case the brushhog were rented rather than owned by defendant, then the injured party might have sued the rental company as well, and the exclusion would have operated to prevent the rental company from seeking coverage under the policy plaintiff issued to defendant. Instead, the hypothetical rental company could reasonably be expected to have its own commercial liability policy to provide a defense and indemnification in such a situation. Similarly, a developer, who is also included in the definition of contractor (and who may or may not also be the owner of the property on which the work is being performed), would be expected to carry his or her own commercial liability insurance (and, for that matter, workers' compensation insurance for any employees).

Plaintiff suggests that defendant's argument amounts to asking this Court to interpret the policy on the basis of defendant's reasonable expectations, a rule of interpretation that plaintiff argues our Supreme Court rejected in *Wilkie*.[20] But plaintiff overreaches in its reliance on *Wilkie*. While it is true that *Wilkie* did hold "that the rule of reasonable expectations has no application in Michigan,"[21] to merely stop at that point tells only half the story. Rather, *Wilkie*[22] drew a distinction between ambiguous and unambiguous contracts, holding that the rule has no application when interpreting *unambiguous* contracts:

> The rule of reasonable expectations clearly has no application to unambiguous contracts. That is, one's alleged "reasonable expectations" cannot supersede the clear language of a contract. Therefore, if this rule has any meaning, it can only be that, if there is more than one way

[20] 469 Mich at 60-63.

[21] *Id*. at 63.

[22] *Id*. at 60.

to reasonably interpret a contract, i.e., the contract is ambiguous, and one of these interpretations is in accord with the reasonable expectations of the insured, this interpretation should prevail. However, this is saying no more than that, if a contract is ambiguous and the parties' intent cannot be discerned from extrinsic evidence, the contract should be interpreted against the insurer. In other words, when its application is limited to ambiguous contracts, the rule of reasonable expectations is just a surrogate for the rule of construing against the drafter.

That is, in the context of interpreting ambiguous contracts, it is merely a different name for the *contra proferentem* doctrine.[23] Thus, *Wilkie* really holds only that the rule of reasonable expectations serves no purpose. An unambiguous contract has no need of interpretation, and with ambiguous contracts, it is merely a different name for the *contra proferentem* doctrine. Having already concluded that the provision at issue here is ambiguous, this doctrine, under whichever name, leads us to conclude that the provision must be interpreted against plaintiff. That is, we believe that the better interpretation of "any property owner"—given that it is included in a list that otherwise includes only those that have a commercial interest (or their employees)—is that it does not include those without a commercial interest in the project, namely, in this case, the homeowner. As Judge Posner ultimately reasoned in *Paszko*, when faced with two plausible interpretations, we must select the one that favors the insured; therefore, the interpretation that excludes the homeowner in this case from the definition of contractor "rules the case."[24]

[23] *Id.* at 61.

[24] *Paszko*, 718 F3d at 725.

Reversed and remanded to the trial court for entry of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant may tax costs. MCR 7.219(A).

GLEICHER, P.J., and M. J. KELLY, J., concurred with SAWYER, J.